UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | CRIMINAL ACTION NO. 7:17-cr-00761-3 |
| § | |
| BRANDON LYDELLE MORRISON § | |

# ORDER

The Court now considers Movant Brandon Lydelle Morrison's "Motion for Compassionate Release." [1] Movant requests the Court "reduce Morrison's sentence to time served or modify his judgement to allow the remainder of his sentence to be served in home confinement" because of Movant's underlying health conditions, family circumstances, and presence of COVID-19 in Movant's prison pursuant to 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step Act of 2018.[2] "A court, on a motion by the BOP [Federal Bureau of Prisons] or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'"[3]

### I. LEGAL STANDARDS

#### a. Appointment of Counsel

Post-sentencing motions requesting leniency and modification of the sentence imposed do not require the Court to appoint counsel for Movant.[4] However, "[a]lthough a Defendant in a § 3582(c) motion does not have a statutory or constitutional right to appointment of counsel, the

---

[1] Dkt. No. 335.
[2] *Id.* at 1–2.
[3] *United States v. Chambliss*, 948 F.3d 691, 692 (5th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).
[4] *United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010) (reaffirming *United States v. Whitebird*, 55 F.3d 1007 (5th Cir. 1995)).

Court may appoint counsel in the interest of justice."[5] When Movant's motion does "not involve complicated or unresolved issues," the interests of justice are unlikely to require appointment of counsel.[6] "[T]he single issue of . . . entitlement to sentence reduction" is unlikely to be legally complex or call for appointment of counsel in the interest of justice.[7]

### b. Timing and Exhaustion of Administrative Remedies

While the First Step Act authorizes what is commonly referred to as compassionate release, Movant must first "fully exhaust[t] all administrative rights to appeal a failure of the Bureau of Prisons" to bring a motion for compassionate release on Movant's behalf, or 30 days must have lapsed since the warden of Movant's facility received Movant's administrative request, whichever is earlier.[8] Movant can satisfy the exhaustion requirement in one of two ways: (1) availing of the Administrative Remedy Program,[9] or (2) submitting a compassionate release request to the warden,[10] in accordance with the requirements under those respective programs

---

[5] *United States v. Rodriguez*, No. 2:10-CR-17, 2015 WL 13664966, at *2 (S.D. Tex. Aug. 20, 2015) (Jack, J.) (citing *United States v. Robinson*, 542 F.3d 1045, 1051–52 (5th Cir. 2008)); *see Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.").
[6] *United States v. Willard*, 481 F. App'x 915, 917 (5th Cir. 2012); *accord United States v. Lewis*, 400 F. App'x 899, 900 (5th Cir. 2010).
[7] *See Rodriguez*, No. 2:10-CR-17, 2015 WL 13664966, at *2.
[8] 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see United States v. Jenkins*, No. 4:15-CR-3079, 2020 WL 2814437, at *2 (D. Neb. May 26, 2020) (Gerrard, C.J.) ("Nothing about the 30-day 'escape hatch' suggests it's contingent on action or inaction by the warden. [The purpose of the statute is] is to prevent prisoners from being effectively denied their right to go to court by administrative delay. It wouldn't make sense to conclude that a prisoner can go to court within 30 days if the delay is the warden's, but the prisoner is interminably stuck if the warden makes a timely decision but the BOP's Regional Director or General Counsel don't."); *United States v. Brown*, No. 4:05-CR-00227-1, 2020 WL 2091802, at *5 (S.D. Iowa Apr. 29, 2020) (holding that an inmate "satisfied the exhaustion requirement's text and purpose" because "[h]e gave the BOP the first chance to review his circumstances and let thirty days pass before proceeding to court"); Government's Supplemental Response to Defendant's Motion for Compassionate Release at 2, *United States v. Woodson* (S.D. Fla. June 5, 2020) (No. 1:13-cr-20180-CMA), Dkt. No. 402 ("[T]he official position of the Department of Justice as well as the Bureau of Prisons [is that] a defendant can file a motion for compassionate release in district court 30 days after requesting relief from the Warden, even if the Warden denies the relief within 30 days."). *But see United States v. Lombardo*, No. 3:15-CR-286, 2020 WL 4448062, at *5 (M.D. Pa. Aug. 3, 2020) (collecting cases disagreeing with this statutory interpretation).
[9] *See* 28 C.F.R. §§ 542.10–.19
[10] *See* 28 C.F.R. § 571.61.

and regulations.[11] "Courts have recognized these two options impose a mandatory requirement that a defendant submit a request to the warden of [the] facility before filing in court."[12] If Movant does not exhaust the administrative process, the Court cannot grant relief.[13] Although Judge Higginson of the United States Court of Appeals for the Fifth Circuit noted that, even though § 3582(c)(1)(A) "contains its own administrative exhaustion requirement, several courts have concluded that this requirement is not absolute and that it can be waived by the government or by the court, therefore justifying an exception in the unique circumstances of the COVID-19 pandemic,"[14] the Court is not bound by Judge Higginson's concurrence and is persuaded by other authority rejecting that position.[15]

### c. Extraordinary and Compelling Reasons to Grant Compassionate Release

"Prior to the passage of the First Step Act [of 2018], only the Director of the Bureau of Prisons (BOP) could file a motion for compassionate release, and that very rarely happened. [The First Step Act has] the intent of 'increasing the use and transparency of compassionate

---

[11] *See* FED. BUREAU OF PRISONS, COMPASSIONATE RELEASE/REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 AND 4205(g), document no. 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf.
[12] *United States v. Crinel*, No. CR 15-61, 2020 WL 955054, at *4 (E.D. La. Feb. 27, 2020) (quotation omitted).
[13] *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (requiring strict compliance with the administrative exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A)); *United States v. Orellana*, No. 4:17-cr-0220, 2020 WL 1853797, at *1 (S.D. Tex. Apr. 10, 2020) (Ellison, J.) ("Because Defendant has not attempted to exhaust his administrative rights, the Court is unable to grant compassionate release.").
[14] *Valentine v. Collier*, 956 F.3d 797, 807 (5th Cir. 2020) (Higginson, J., concurring); *see United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880, at *2 (S.D.N.Y. Apr. 3, 2020) (Torres, J.) (quotation omitted) ("[T]he requirement of completing the administrative process may be waived if one of the recognized exceptions to exhaustion applies.").
[15] *United States v. Edwards*, No. 3:13-CR-00012-1, 2020 WL 1987288, at *9 (M.D. Tenn. Apr. 27, 2020) (collecting cases rejecting the holding of *Zukerman* and pointing out that the position that "the exhaustion requirement in the FSA cannot be waived is supported by the only court of appeals to address the issue so far in connection with the coronavirus"); *see United States v. Britton*, No. 18-CR-108-LM, 2020 WL 2404969, at *6 (D.N.H. May 12, 2020) (holding the exhaustion requirement is not subject to equitable or exigent exceptions).

release.'"[16] The First Step Act authorizes a sentence reduction when "extraordinary and compelling reasons warrant such a reduction" with due consideration to sentencing factors, such as the seriousness of an inmate's offense and the need to prevent recidivism.[17] The statute itself does not define what constitutes "extraordinary and compelling reasons,"[18] but the words used indicate the reasons must be "[b]eyond what is usual, customary, regular, or common" and involve so great a need that irreparable harm or injustice would result if the requested relief is not granted.[19] Ordinarily, a sentencing reduction must be consistent with the applicable United States Sentencing Commission Guidelines,[20] but the current Sentencing Guidelines are not binding on this Court.[21] Nonetheless, the Sentencing Guidelines provide that such extraordinary and compelling reasons may include the inmate's medical condition, family circumstances, and age,[22] and these may be informative criteria.[23] The Coronavirus Disease 2019 (COVID-19) pandemic in and of itself and its relationship to prisons or associated fears of contracting the

---

[16] *United States v. Gutierrez*, No. CR 05-0217 RB, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019) (footnote omitted) (quoting First Step Act, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018)); *see United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020) (the First Step Act "eliminated the BOP Director's role as the *exclusive* channel through which a sentence reduction could be considered by courts.").

[17] 18 U.S.C. § 3582(c)(1)(A)(i) (citing 18 U.S.C. § 3553(a)); *see United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) ("[T]he district court must provide specific factual reasons, including but not limited to due consideration of the § 3553(a) factors, for its decision" on a motion for compassionate release).

[18] *Crowe v. United States*, 430 F. App'x 484, 485 (6th Cir. 2011) (holding the statute does not "define—or place any limits on—what 'extraordinary and compelling reasons' might warrant such a reduction").

[19] *See United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (Marmolejo, J.).

[20] *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

[21] *See United States v. Perdigao*, No. CR 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) ("Many courts have concluded that this discrepancy [the Sentencing Guidelines have not been amended since the First Step Act and therefore bear inconsistencies] means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act."); *United States v. Crinel*, No. CR 15-61, 2020 WL 955054, at *3–4 (E.D. La. Feb. 27, 2020) (explaining why the Sentencing Commission's policy statement is not binding on the Court); *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 n.6 (S.D.N.Y. 2020) (same); *United States v. Brown*, No. 4:05-CR-00227-1, 2020 WL 2091802, at *6–7 (S.D. Iowa Apr. 29, 2020) (holding the Court's discretion is aided by the Sentencing Guidelines but not constrained).

[22] U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 application notes (U.S. SENTENCING COMM'N Nov. 1, 2018).

[23] *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction.").

illness do not warrant compassionate release.[24] Accordingly, Movant must identify individualized extraordinary and compelling reasons for compassionate release. Furthermore, an increased individual vulnerability to illness persists whether or not an inmate is incarcerated, so Movant must show some indicia that a sentence reduction is the better course than continued imprisonment.[25]

Even if the Court does find "extraordinary and compelling reasons" to warrant a sentence reduction, Movant must not be "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[26] As applicable here, in assessing the potential danger, the Court takes into account:

> **(1)** the nature and circumstances of the offense charged . . . ;
> . . .
> **(3)** the history and characteristics of the person . . . ; and
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .[27]

The Court, however, does not consider whether to modify a sentence imposed to a sentence of home confinement. Section 603(a) of the First Step Act of 2018 amended the Second

---

[24] *United States v. Koons*, No. CR 16-214-05, 2020 WL 1940570, at *4 (W.D. La. Apr. 21, 2020) ("The Court stresses that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person. The Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner."); *United States v. Williams*, No. 4:16-CR-120 (2), 2020 WL 3078599, at *3 (E.D. Tex. June 9, 2020) (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) ("Defendant cites no authority for the proposition that the *fear* of contracting a communicable disease warrants a sentence modification."); *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[A] reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission.")).
[25] *See Clark*, 2020 WL 1557397, at *5 (collecting cases discussing the movant's failure to show that the BOP plan was inadequate in the context of movant's demonstration of extraordinary and compelling reasons for a sentence reduction). *But see United States v. Atkinson*, No. 2:19-CR-55 JCM (CWH), 2020 WL 1904585, at *3 (D. Nev. Apr. 17, 2020) (noting "obvious shortcomings" in the BOP action plan to address COVID-19 and therefore diminishing the hurdle an inmate must clear to obtain compassionate release).
[26] U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(2).
[27] 18 U.S.C. § 3142(g).

Chance Act of 2007 to include certain release conditions such as terminal illness,[28] but the discretion to release a prisoner to home confinement lies solely with the United States Attorney General.[29]

## II. ANALYSIS

The final sentence of Movant's motion requests the Court appoint counsel "to cure any deficiencies in this Pro Se motion and to assist [Movant] in build the record if this Honorable Court finds the motion lacking."[30] Movant's 27-page motion presents numerous legal, journalistic, and scientific sources in support of his motion and the only legal issue presented in the motion is whether Movant should receive a sentence reduction. Accordingly, the Court holds that Movant is equipped to represent himself and the interests of justice do not call for the Court to appoint counsel on Movant's behalf.

Movant represents that he submitted a request for compassionate release to his warden on June 20, 2020, and a similar request "at the regional level" on July 1, 2020.[31] Because more than 30 days have lapsed "from the receipt of [Movant's] request by the warden of the defendant's facility," the Court holds that Movant has exhausted his administrative remedies and is entitled to be considered for compassionate release by this Court.[32] However, Movant's request for home confinement[33] will not be considered.[34]

---

[28] Pub. L. No. 115-391, § 603(a), 132 Stat. 5194, 5238 (Dec. 21, 2018).
[29] *See* 34 U.S.C. § 60541(g); *United States v. Curry*, No. CR 6:06-082-DCR, 2019 WL 508067, at *1 (E.D. Ky. Feb. 8, 2019) ("Because the First Step Act gives the *Attorney General* the discretion to determine if and when home confinement is appropriate, this Court does not have the authority to grant the requested relief."); *Burg v. Nicklin*, No. EP-19-CV-24-FM, 2019 WL 369153, at *3 (W.D. Tex. Jan. 29, 2019) ("The Attorney General—and by delegation the BOP—has exclusive authority and *discretion* to designate the place of an inmate's confinement.").
[30] Dkt. No. 335 at 27.
[31] Dkt. No. 335 at 6–7.
[32] 18 U.S.C. § 3582(c)(1)(A); *see supra* note 8.
[33] Dkt. No. 335 at 3.
[34] *See supra* note 29.

Movant was originally charged with, among other things, conspiring to import more than 500 grams of methamphetamine from Mexico to the United States.[35] Movant was part of a 6-person drug smuggling operation, and Movant personally transported 15.46 kilograms of liquid methamphetamine across the U.S.–Mexico border. At age 26, Movant was arrested on August 6, 2017[36] and pled guilty on September 25, 2017.[37] After numerous continuances, the Court sentenced Movant to 122 months in prison and other conditions on August 23, 2019.[38] Movant asserts that he is a "non-violent first time offender"[39] but his presentence investigation report revealed one conviction in 2009, at age 18, for disorderly conduct in connection with threatening a high school.[40] Movant is expected to be released in November 2027 and has served about 3 years in prison, which is just under 30% of his sentence.

Movant offers a well-sourced argument for why inmates in prisons are at heightened risk for contracting COVID-19,[41] but none of Movant's arguments are particularized to him and the arguments are unpersuasive.[42] However, Movant explains that his particular prison, Federal Medical Center Fort Worth, has "ballooned to well over 600 cases" of COVID-19 illnesses and Movant has "pre-existing health conditions" that suggest compassionate release.[43] Specifically, Movant points "BOP medical records" showing his chronic asthma, poly-neuropathy, a vade mecum rescue inhaler, lung scarring, a granuloma growth, severe bronchitis, and a history of chronic smoking.[44] However, the only exhibit Movant attached does not support his contentions

---

[35] Dkt. No. 37 at 3.
[36] Dkt. No. 2.
[37] *See* Dkt. No. 74.
[38] Dkt. No. 283.
[39] Dkt. No. 335 at 26.
[40] Dkt. No. 173 at 27.
[41] Dkt. No. 335 at 15–17.
[42] *See supra* notes 24–25.
[43] Dkt. No. 335 at 18–22.
[44] Dkt. No. 335 at 3–4.

or show any illnesses.[45] Furthermore, Movant points to a May 11, 2020, news story to support his contention that FMC Fort Worth has a ballooning COVID-19 infection rate,[46] but this information is months old. As of August 20, 2020, FMC Fort Worth reports only 5 inmates and 8 staff members have confirmed cases of COVID-19.[47] As Movant admits, the BOP has since "limited visitors and implemented 'enhanced screening' of staff to reduce the risk of exposure to inmates."[48] Although Movant challenges the effectiveness of the BOP measures,[49] even if the Court were to follow the reasoning of other courts that have found BOP measures ineffective,[50] Movant still has not shown that the measures taken are ineffective as to *him*.[51] Indeed, Movant represents that he has been moved to what he calls "negative tents" away from COVID-19-positive inmates.[52] The Court does not find the presence of "extraordinary and compelling reasons" to warrant a sentence reduction.

Furthermore, even considering the 18 U.S.C. §§ 3142(g) and 3553(a) factors,[53] the Court would not grant compassionate release. Movant was convicted of a crime with a 10-year

---

[45] *See* Dkt. No. 335-1.
[46] Dkt. No. 335 at 18 (citing Maria Guerrero, *More than 600 Inmates Test Positive for COVID-19 at Federal Prison in Fort Worth*, NBCDFW (May 11, 2020, 9:17 PM), https://www.nbcdfw.com/news/coronavirus/more-than-600-inmates-test-positive-for-covid-19-at-federal-prison-in-fort-worth/2367644/).
[47] *See* FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/index.jsp; *see Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 965 n.4 (S.D. Tex. 2016) (Hanks, J.) (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)) (holding that judicial notice of Internet information is appropriate).
[48] Dkt. No. 335 at 18.
[49] *See id.* at 19–22.
[50] *See United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *3 (D. Idaho Apr. 7, 2020) ("The presence of COVID-19, though, necessitates a more expansive interpretation of what self-care means. As noted previously, the prison environment prevents Esparza from being able to effectively self-isolate in the ways the CDC recommends for a person of his age and diminished health. In this moment, the inability for high risk individuals to fully self-isolate is an inability to provide self-care. So long as Esparza remains in custody, his capacity to protect himself from a serious, or even fatal, infection will be compromised.").
[51] *See United States v. Gileno*, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("With regard to the COVID-19 pandemic, [movant] has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within [movant's] correctional facility, or that the facility is specifically unable to adequately treat [movant].").
[52] Dkt. No. 335 at 21–22.
[53] U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N Nov. 1, 2018).

mandatory minimum sentence of incarceration,[54] which he has served less than one-third of. If released, Plaintiff plans to simply live at home,[55] but Movant's criminal associations and behavior indicate a history of coordinating drug smuggling and the use of controlled substances,[56] so permitting him to live at home grants the opportunity to continue coordinating the illegal transportation of illicit substances into the United States. Upon these facts, particularly considering the "danger to any person or the community that would be posed by the person's release," the Court finds that the §§ 3142(g) and 3553(a) factors cannot be satisfied even if a sentence reduction was warranted. Movant's motion for compassionate release is **DENIED**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 20th day of August 2020.

_____
Micaela Alvarez
United States District Judge

---

[54] 21 U.S.C. § 960(b).
[55] Dkt. No. 335 at 26.
[56] *See* Dkt. No. 173.